IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03126-M-RJ

LAWRENCE WOODARD,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, et al.,

    Defendants.

**ORDER**

On May 17, 2024, federal inmate Lawrence Woodard ("plaintiff") filed *pro se* a complaint under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. Compl. [D.E. 1].

Plaintiff alleges, *inter alia*, that: staff at Federal Correctional Institution ("FCI") Butner placed him in a Special Housing Unit ("SHU") cell known to be infested with bedbugs; "Mr. Muscles" [sic] directed his placement in the SHU from June 8 to 13, 2022; while in the SHU, he had no access to phone or email to contact loved ones, reading material, personal property, medical sick call, recreation, or the law library; while in the SHU, he was bitten by bedbugs which disturbed his sleep and led to hives, itching and burning skin for days; he complained about these symptoms, and "Mr. Muscles" [sic] told him medical staff would verify the issues were caused by bedbugs, but this assessment was never completed; medical staff did not see him until June 10, 2022, and he was not assessed but merely prescribed medical cream that was not delivered until June 13, 2022; and his symptoms persisted for several days after receiving the cream. Id. at 6–8.

As to his injuries, he alleges he suffered hives, rashes, and burning skin, and he still suffers from anxiety, emotional distress, and issues of trust, especially when he sees bugs. Id. at 9.

For relief, he seeks compensation for pain and suffering due to staff placing him where he would likely be exposed to bed bugs, thus leading to his injuries and ongoing issues. See id. at 10.

On November 14, 2024, the court, *inter alia*: conducted its initial review; allowed to proceed a Bivens claim against defendant Aaron Muscle as to purported deliberate indifference to plaintiff's placement in a cell with bedbugs and delay of his related medical treatment; allowed to proceed an FTCA claim against the United States as to plaintiff's bedbug exposure and the delay of his related medical treatment, but dismissed other claims and defendants. See Order [D.E. 5].

On April 25, 2025: the United States moved to dismiss the complaint for failure to state a claim, Mot. [D.E. 19], and filed a memorandum [D.E. 20]; defendant Muscle filed a motion to dismiss or, in the alternative, for summary judgment, Mot. [D.E. 22], a memorandum [D.E. 23], a statement of material facts [D.E. 24], and an appendix [D.E. 25]; and, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about these motions, the response deadlines, and the consequences of failing to respond, see [D.E. 21, 26].

Plaintiff timely filed responses in opposition. See [D.E. 27, 29].

### Statement of Facts:

Defendant Muscle's statement of facts is deemed admitted for the purpose of considering his instant motion. See Fed. R. Civ. P. 56(e)(2); E.D.N.C. Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); see also Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished).

Defendant Muscle presently is employed as an Environment of Care Specialist with the Federal Bureau of Prisons ("BOP") at FCI Butner. See Stmt. Mat. Facts. [D.E. 24] at ¶1. In his prior role as a Safety Compliance Specialist, Muscle "was personally involved in the working to

2

Case 5:24-ct-03126-M-RJ    Document 30    Filed 12/08/25    Page 2 of 8

address the bed bug infestation at FCI Butner II, which has been a recurrent issue from approximately the fall of 2021 through the present." Id. at ¶¶2–3.

"On the morning of June 8, 2022, [Plaintiff] notified [Muscle] that Plaintiff believed his assigned cell had bed bugs. That same day at approximately noon, [Muscle] personally inspected Plaintiff's assigned cell, cell 16 in LA unit, and discovered bed bugs in the cell." Id. at ¶4.

"Consistent with the procedures at that time, both Plaintiff and his cellmate were immediately removed from cell 16." Id. at ¶5. "Plaintiff's cell, all inmate personal property in the cell, all bedding, and all of the inmates' clothing was treated and thoroughly cleaned beginning that same day, June 8, 2022, and was again treated the following day, June 9, 2022." Id. at ¶6. "As a part of the treatment process, the inmates' clothing was placed in water soluble bags and sent to the laundry department cleaning, as was the inmates' linens." Id. at ¶7. "While the cell was undergoing treatment, neither Plaintiff nor his cellmate, nor anyone else, would be allowed to return to the cell until cleared by the institution's Safety Department." Id. at ¶8.

"Both Plaintiff and his cellmate were temporarily transferred to the [SHU] for the sole purpose of isolation and quarantining each of them while the cell and their property was being treated." Id. at ¶9. "Prior to Plaintiff and his cellmate's transfer to the SHU, they were both visually inspected, provided with showers, and issued new clothing." Id. at ¶10.

"Once Plaintiff and his cellmate were moved to the SHU for isolation purposes, [Muscle] notified the institution's Health Services Department so that medical providers could follow up with Plaintiff and his cellmate." Id. at ¶11.

"On June 9, 2022, at approximately 2:30 PM, [Muscle] notified Plaintiff's Unit Team that Plaintiff and his cellmate could be returned to their assigned cell once the treatment was completed, which would be at approximately 3:30-3:45 PM that same day." Id. at ¶12.

As a Safety Compliance Specialist, Muscle "did not have any involvement in inmate cell assignments, either in the general inmate housing units or the institution's SHU, as those duties are the responsibility of the inmate's assigned Unit Team and SHU staff, respectively." Id. at ¶13. Additionally, Muscle is not a medical provider and he "did not have any involvement in the provision of medical care to inmates or the timing of said medical care." Id. at ¶14.

"Prior to Plaintiff's notification on June 8, 2022, there had not been any reports of bed bugs in cell 16 in LA unit since November 1, 2021, and the cell was effectively treated and cleared at that time." Id. at ¶15. Following the November 1, 2021, report of bedbugs and treatment of cell 16, Muscle "did not receive any additional reports of bedbugs in that cell until Plaintiff's report[.]" Id. Plaintiff was not assigned to cell 16 in LA unit until June 3, 2022. See id. at ¶16.

## Legal Standards:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). To withstand a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

When considering a motion to dismiss, the court need neither accept a complaint's legal conclusions drawn from the facts, see Iqbal, 556 U.S. at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," Giarratano, 521 F.3d at 302 (quotation omitted). Nevertheless, the court presumes as true the factual allegations in the complaint and construes these allegations in the light most favorable to the non-moving party. Albright v. Oliver,

4

510 U.S. 266, 268 (1994); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Further, although the court liberally construes *pro se* filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), all complaints must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

In support of his instant motion, defendant Muscle argues, *inter alia*, that plaintiff's claims are not cognizable under Bivens. See Def.'s Mem. [D.E. 23] at 7–18.

To state a viable Bivens claim, plaintiff must plead that Muscle, through his individual actions, violated the Constitution. Iqbal, 556 U.S. at 676. In Ziglar v. Abbasi, 582 U.S. 120, 130–31 (2017) ("Abbasi"), however, the Supreme Court noted it had recognized Bivens causes of action

5

in only three instances – a Fourth Amendment claim in Bivens, a Fifth Amendment claim in Davis v. Passman, 442 U.S. 228 (1979) ("Davis"), and an Eighth Amendment claim in Carlson v. Green, 446 U.S. 14 (1980) ("Carlson").

The Court also noted, "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." Id. at 133 (citations omitted). To recognize implied causes of action under Bivens, a court must discern whether it has authority "to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." Id. The Court opined that expanding the Bivens remedy is now a "disfavored judicial activity," id. at 135 (quotation omitted), and that "separation-of-powers principles are or should be central to the analysis" when a party seeks an implied cause of action, id.

If a claim "presents a new Bivens context," id. at 139, a court must assess whether any "special factors counsel[ ] hesitation" in recognizing a remedy "in the absence of affirmative action by Congress." Id. at 136; see Hernandez v. Mesa, 589 U.S. 93, 102 (2020) (reaffirming the Abbasi two-step analysis); but see Egbert v. Boule, 596 U.S. 482, 492 (2022) (acknowledging that, although Abbasi "describe[s] two steps," the steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," and suggesting that a "rational reason" to defer to Congress will be present "in most every case").

A Bivens claim is "new" if the case differs "in a meaningful way from previous Bivens cases decided by" the Court. Abbasi, 582 U.S. at 139. Such meaningful differences include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the function of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 140.

6

Plaintiff's claims against Muscle present a "new context" that is meaningfully different from the causes of action previously recognized in Bivens, Davis, or Carlson. Although he seeks to rely upon the Eighth Amendment, see Pl.'s Resp. [D.E. 27] at 1–2, his alleged injuries – itching, hives, rashes, burning skin, anxiety, depression, and trust issues, see Compl. [D.E. 1] at 9 – are vastly different from those in Carlson, 446 U.S. at 17 (finding a Bivens remedy available where officials failed to adequately treat prisoner's fatal asthma attack); see Hernandez, 589 U.S. at 103 (noting a Bivens claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized"); Tate v. Harmon, 54 F.4th 839, 845–46 (4th Cir. 2022) (noting "the 'new context' standard is sufficiently broad that [the plaintiff's] conditions-of-confinement claim does indeed arise in a 'new context.'").

There also are "special factors" counseling hesitation before expanding the Bivens remedy as alternative relief is available via the FTCA or prison grievances. See Abbasi, 582 U.S. at 136, 141–42, 148; Earle v. Shreves, 990 F.3d 774, 780 (4th Cir.) (noting, although "alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief and remain relevant" to the "special factor" analysis), cert. denied, 142 S. Ct. 358 (2021).

Answering the Supreme Court's ultimate Bivens remedy expansion query – "whether there is any reason to think that Congress might be better equipped to create a damages remedy," Egbert, 596 U.S. at 492 – there indeed is a "rational reason" for the court instead to defer to Congress for creation of a damages remedy in this case, and the court declines to extend the Bivens remedy, see Abbasi, 582 U.S. at 140, 147 (noting, extension of the Bivens remedy "is a decision for the Congress to make, not the courts," and "even a modest [Bivens] extension is still an extension").

Next, under the FTCA the United States waives its sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of

7

his office or employment." 28 U.S.C. § 1346(b)(1); Millbrook v. United States, 569 U.S. 50, 52 (2013); United States v. Muniz, 374 U.S. 150, 150 (1963) (finding a prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." (footnote omitted)).

The United States generally argues that plaintiff's alleged physical injuries due to bed bug exposure – "itching, hives, rashes and burning skin" – are *de minimis*. See Def.'s Mem. [D.E. 20].

In his response, plaintiff generally argues that he has plausibly alleged a physical injury from bed bug exposure that is more than *de minimis*, and that discovery will allow him to establish the extent of the pest infestation. See Pl.'s Resp. [D.E. 29].

Succinctly stated, because the United States does not address whether plaintiff's purportedly *de minimis* physical injuries would preclude recovery under North Carolina law, the court DENIES WITHOUT PREJUDICE this motion to dismiss. See, e.g., Carter v. United States, 694 F. App'x 918, 923–25 (4th Cir. 2017) (unpublished).

Conclusion:

In sum, the court GRANTS defendant Muscle's motion to dismiss or, in the alternative, for summary judgment [D.E. 22], but DENIES WITHOUT PREJUDICE the United States' motion to dismiss [D.E. 19]. After the United States answers the complaint, the court then REFERS the action to Magistrate Judge Robert B. Jones, Jr. for entry of a scheduling order.

SO ORDERED this 8th day of December, 2025.

RICHARD E. MYERS II
Chief United States District Judge